UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

PAMELA PICCONE,

        Plaintiff,

v.

TOWN OF WEBSTER, et al.,

        Defendants.

DECISION & ORDER

09-CV-6266T

---

## PRELIMINARY STATEMENT

By order dated July 2, 2009, the above-captioned matter was referred to the undersigned for the supervision of pretrial discovery and the hearing and disposition of all non-dispositive motions, pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B). (Docket # 5). Plaintiff Pamela Piccone ("Piccone") has brought suit under 42 U.S.C. § 1983 against the Town of Webster, New York (the "Town"), the Town's Supervisor and its Highway Superintendent, alleging that she was subjected to a hostile work environment on the basis of gender and age, and terminated from her employment on the basis of age. (Docket # 1).

Currently pending before this Court are motions filed by both parties seeking sanctions for spoliation of evidence. (Docket ## 17, 23). The allegedly spoliated evidence at issue in both motions is of the same type: sexually suggestive and otherwise offensive and off-color email communications between and among Piccone, defendant Barry Deane ("Deane"), the Superintendent of the Town's Highway Department, and other Town employees. In addition, the Town seeks an order compelling Piccone to produce (1) certain communications between her

stepson Damon Piccone and herself and (2) her personal computer and other electronic data storage devices for forensic examination to determine whether they contain responsive emails that have not been produced.[1] Finally, the Town seeks reimbursement of its attorneys' fees and costs incurred in opposing Piccone's spoliation motion.

For the reasons set forth below, I deny both parties' motions for sanctions and grant in part and deny in part the Town's motion to compel.

## FACTUAL BACKGROUND

Piccone began working part-time in the Town's Highway Department in 1995. (Docket # 1 at ¶¶ 10-11; # 26 at ¶ 2). In 2006, Piccone was permanently hired for a part-time position in the Drainage Department and alleges that Deane told her that the position would become full-time within one year. (Docket # 1 at ¶¶ 22-23). The full-time position never materialized, however, and the Town terminated Piccone on January 2, 2008. (*Id*. at ¶ 32). Piccone then filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC") on June 17, 2008. (*Id*. at ¶ 7). She filed the instant lawsuit on May 21, 2009. (Docket # 1).

Piccone's complaint alleges that she experienced a hostile work environment during her tenure in the Highway Department. (*Id*. at ¶ 12). Specifically, Piccone alleges that many employees and supervisors in that department frequently made derogatory comments about women, persons of Italian descent and older individuals, which included ethnic slurs and sexual

---

[1] The Town's cross-motion also sought an order compelling Piccone to produce certain emails in electronic form. Those issues were resolved at oral argument on May 4, 2010. (Docket # 53 at 44). The transcript of the May 4, 2010 oral argument will be referred to as "Tr. __".

jokes and innuendoes. (*Id*. at ¶¶ 14-19, 25, 31). Many of the offensive comments and jokes were contained in non-work-related email, much of which Piccone received from Deane. (Docket # 17-2 at ¶ 5). One such email that Piccone received from Deane in October 2006 read:

> Today is International Disadvantaged People's Day.
>
> Please send an encouraging message to a retarded friend, just as I've done.
>
> I don't care if you lick windows, interfere with farm animals, vote liberal or occasionally s--- yourself.......You hang in there sunshine !!!
>
> You're f------ special...

(Docket # 26, Exhibit ("Ex.") A (the "October 2006 email")).[2] The parties agree that Piccone complained to Deane about the October 2006 email (Docket # 26 at ¶ 6), but the record does not reveal the substance or manner of her complaint. On October 19, 2006, Deane responded by email to Piccone's complaint, stating, "It was meant to be a joke and not anything other than that. So if you took it as an insult I'm sorry. I laughed and thought you would too." (Docket # 17, Ex. G).

Approximately five months later, on March 20, 2007, Piccone sent the following email to Deane:

> Dear Barry:
>
> Is this why you haven't hired me for the full time Drainage Job Opening yet... Sorry but I will never look like this!
>
> With Love!!
>
> Pammie

---

[2] The email contained the expletives, rather than the ellipses used above.

(Docket # 17, Ex. H (the "March 2007 email")). Below the message was a link to a website titled "www.imagebeaver.com," which the Town claims contained pornographic material. (Docket # 26 at ¶ 7).³ Piccone claims that she intended her email as a complaint about the fact that she had not been offered the full-time position that she had been promised. (Docket # 17-2 at ¶ 15).

I. **Piccone's Motion**

On August 17, 2009, Piccone served defendants with a request for production of "[a]ll documents, computer data, tape recordings, e-mail, including deleted e-mail, or any writings memorializing in any way recording or reflecting any words, statements, declarations, conversations or other communications by or to the Plaintiff or any of his [*sic*] superiors that were obtained from defendant's computers or phone system." (Docket # 17, Ex. B). On October 19, 2009, the Town produced only fourteen responsive emails, but stated that it intended to supplement its production at a later date. (Docket # 17-2 at ¶ 9; # 24, Ex. C).

On December 18, 2009, Piccone obtained an affidavit from her stepson Damon Piccone ("Damon") alleging that on two occasions he removed pornography from Deane's computer. (Docket # 17-13, Ex. I). He later clarified that the first occasion occurred in 2004 and the second in April 2007. (Docket # 17-15). According to Damon, on these two occasions, he "cleaned" Deane's computer by deleting pornographic and nude images and inappropriate emails, as well as removing temporary files and internet cache. (*Id.*). Damon understood that the

---

³ The subject line of the email indicates that Piccone may have forwarded the website link to Deane from an email that she received from someone else. (Docket # 17-13, Ex. H).

reason Deane wanted him, rather than the Town's staff, to clean the computer was "because [Deane] was embarrassed and had been admonished previously for having pornography on his computer." (Docket # 34-3 at ¶ 5). This "clean up" work allegedly occurred onsite at the Highway Department while Deane was present and involved only tasks that Deane permitted Damon to perform. (*Id*. at ¶¶ 7, 9).

Based upon the information provided by Damon, Piccone moved for sanctions based on spoliation of evidence. (Docket # 17). Three weeks after the motion was filed, the Town supplemented its email production, this time producing over 2,000 emails. (Docket # 24 at ¶ 4). Piccone alleges that the Town's production is still deficient, citing its failure to include approximately 200 offensive emails that Piccone received from Deane during the period from 2005 through 2007, which she herself has produced in discovery. (*Id*. at ¶¶ 11-12, 35-36; Docket # 33 at ¶ 51). Piccone contends that the absence of these emails from the Town's production demonstrates that they must have been destroyed when her stepson cleaned Deane's computer and justifies the imposition of sanctions against the Town. (Docket # 33 at ¶ 51).

The Town denies that it destroyed any emails and has submitted an affidavit from Deane stating that he never authorized Damon to review, let alone delete, any emails from his computer. (Docket # 26 at ¶¶ 10-11). He recalls that Damon worked on his computer to try to improve its performance and that Damon gained access to it from an offsite location. Any emails that may have been deleted in the process, Deane asserts, were removed without his authorization. (*Id*. at ¶ 11).

The Town further contends that it has produced all responsive emails in its possession, including all emails that were in Piccone's email account at the time of her

5

termination. In support of this contention, the Town has submitted an affidavit from Steve Peace, the Town's Director of Information Technology, affirming that during the time period relevant to this litigation, the Town did not "globally" archive emails, although it had a policy to preserve the email accounts of terminated employees. (Docket # 37). According to Peace, any emails that Piccone may have deleted during the course of her employment would have remained accessible only for three weeks after deletion. (*Id*.).

## II. The Town's Motion

In its cross-motion, the Town seeks sanctions based upon Piccone's alleged spoliation of nearly two hundred emails. (Docket # 24 at ¶ 23). In addition, the Town seeks to compel the production of Piccone's personal computer and electronic data storage devices for analysis by a forensic expert, as well as certain communications between Damon and Piccone. (Docket # 24, Ex. F at ¶¶ 1, 2, 4).

In August 2009, the Town served Piccone with a request for the production of documents that included a request for all communications between Piccone and Town employees from 2003 to 2008. (Docket # 24, Ex. E). After receiving no response to the request, the Town filed a motion to compel on January 29, 2010 (Docket # 12), and Piccone responded to the demand on February 23, 2010. (Docket # 24 at ¶ 5).[4] According to the Town, her production

---

[4] This Court denied the Town's motion to compel on March 3, 2010, but ordered Piccone to reimburse the Town for its fees in bringing the motion. (Docket # 20).

was deficient because it did not include emails that Piccone sent to Deane or any emails between Piccone and other Town employees.[5] (Docket # 24, Ex. E).

On February 19, 2010, the Town served Piccone with a second document request, this time requesting the production of emails that she had sent to and received from various identified Town employees during the period 2005 through 2008, as well as "[a]ll documents sent to or received from Damon Piccone concerning emails allegedly removed by him from Barry Deane's computer, or any other allegation relevant to the plaintiff's claims." (Docket # 24 at ¶ 9, Ex. F). In addition, the request also demanded that Piccone produce for inspection her personal computer and other electronic data storage devices. (Docket # 24, Ex. F). On February 25, 2010, Piccone objected to the production of her personal computer and the storage devices and her communications with her stepson Damon Piccone, but produced additional emails between Town employees and herself. (Docket # 24, Ex. G). Specifically, Piccone produced hard copies of 56 additional emails, only four of which were emails that she had sent to Deane and other Town employees. (Docket # 24 at ¶ 9). The remainder consisted of emails that she had received from Town employees other than Deane or that she had sent between her work and personal email accounts. (*Id.*).

The Town claims that Piccone has "cherry picked" her production, choosing to exclude some emails from production, including some that the Town itself has produced. (Docket # 24 at ¶¶ 10-14, Ex. H). For example, while the Town has produced sixty-nine emails sent from Piccone to Deane and other Town employees, Piccone has produced only four such

---

[5] Her production included copies of certain emails that the Town had already produced and emails that Deane had sent to Piccone. (Docket # 24, Ex. E).

7

communications.⁶  (Docket # 43 at ¶ 7).  In addition, the Town has identified and produced 119 emails sent between Piccone's work and personal email accounts that Piccone has not produced in discovery.  (*Id*.).  Given these discrepancies, the Town contends that it should be permitted to examine Piccone's personal computer and electronic data storage devices to search for responsive documents.  (Docket # 44).

## DISCUSSION

### I. <u>Spoliation Motions</u>

I turn first to the motions for sanctions for spoliation of evidence filed by both parties.  "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).  A court has broad discretion to impose appropriate sanctions under Rule 37 of the Federal Rules of Civil Procedure where a party spoliates evidence in violation of a court order.  *See* Fed. R. Civ. P. 37(b)(2); *West v. Goodyear Tire & Rubber Co.*, 167 F.3d at 779.  *See also Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106 (2d Cir. 2002).  Absent a court order, "a district court may impose sanctions for spoliation, exercising its inherent power to control litigation."  *West*, 167 F.3d at 779.  *See also Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d at 106-07 (citing *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 135-36 (2d Cir. 1998)); *Reilly v. NatWest Mkts. Group Inc.*, 181 F.3d 253, 267 (2d Cir. 1999) ("[w]hether exercising its

---

⁶ Some of the sixty-nine emails are sexual in nature, such as one with the subject line, "My First Condom." (Docket # 49).

8

inherent power or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses"), *cert. denied*, 528 U.S. 1119 (2000).

A party bringing a spoliation motion must demonstrate that: (1) the party charged with destroying the evidence had an obligation to preserve it; (2) the records were destroyed with a "culpable state of mind"; and (3) the destroyed evidence was relevant to the party's claim or defense. *See Residential Funding Corp.*, 306 F.3d at 107 (citing *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107-12 (2d Cir. 2001)); *see also Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 430 (S.D.N.Y. 2009); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003).

"Identifying the boundaries of the duty to preserve involves two related inquiries: *when* does the duty to preserve attach, and *what* evidence must be preserved?" *Zubulake v. UBS Warburg LLC*, 220 F.R.D. at 216 (emphasis in original). A party is obligated to preserve evidence when it has "notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir.), *cert. denied*, 534 U.S. 891 (2001); *Creative Res. Group of New Jersey, Inc. v. Creative Res. Group, Inc.*, 212 F.R.D. 94, 105 (E.D.N.Y. 2002). Thus, the duty to preserve evidence may arise when a substantial number of key personnel at a company or organization anticipate litigation. *See Toussie v. County of Suffolk*, 2007 WL 4565160, *7 (E.D.N.Y. 2007); *Zubulake*, 220 F.R.D. at 217 (speculation by one or two employees regarding a lawsuit "does not generally impose a firm-wide duty to preserve").

Once the duty to preserve has attached, a party should institute a litigation hold and "suspend its routine document and retention/destruction policy." *Toussie v. County of*

*Suffolk*, 2007 WL 4565160 at *7 (quoting *Zubulake*, 220 F.R.D. at 218).  A party must preserve "what it knows, or reasonably should know, is relevant to the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request."  *Zubulake*, 220 F.R.D at 217 (quoting *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72 (S.D.N.Y. 1991)).

### A. Piccone's Motion

According to Piccone, the Town should have anticipated that she would file a claim of hostile work environment when she complained to Deane about the October 2006 email and that she would sue for wrongful failure to promote when she sent the March 2007 email to Deane.  (Docket # 17-16 at 3).  Despite this contention, Piccone herself admits that she did not consider suing the Town for discrimination until ten months later when she was terminated in January 2008.  (Docket # 34-5).  Piccone maintains that the Town should have anticipated litigation earlier than she did because Deane, one of its high-level supervisors, should have known that the emails he sent were offensive and that when she complained to him about one of them, she was reasonably likely to file a discrimination lawsuit.

In opposition to Piccone's motion, the Town has submitted an affidavit from Deane stating that he had no idea that Piccone was anticipating litigation when she complained about the October 2006 email or sent him the March 2007 email referencing a full-time drainage position.  (Docket # 26).  Deane states that, in fact, no such position existed.  (*Id*. at ¶ 8).

Although there may be circumstances from which to infer that the defendant, but not the plaintiff, reasonably should have anticipated litigation between the parties, this case does not present those circumstances.  Here, Piccone cites the October 2006 and March 2007 emails as

10

evidence to establish that Deane reasonably should have anticipated that she would sue the Town for discrimination even before she was terminated. I disagree that the emails support such a conclusion.

First, the October 2006 email is an offensive joke about persons with disabilities and is not gender-related; nor has Piccone alleged that it was sent to her "because of [her] sex." *See Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 79-80 (1998) (Title VII prohibits discrimination "because of . . . sex" in the term or conditions of employment). Piccone's claim is based upon gender and age, not upon disability. (*See* Docket # 1). Moreover, the record reveals no information as to the substance of Piccone's complaint to Deane about the email and, in any event, contains evidence that Piccone herself continued to send off-color and inappropriate emails to Deane and other Town employees even after her complaint, including the March 2007 email to Deane with a link to a pornographic website. (*See* Docket # 24 at Exs. J, K, N, O; # 26 at ¶ 6). Considering these facts, I cannot find that an isolated complaint about one email targeted at a group of persons of which the plaintiff was not a member, even as grossly offensive as Deane's email was, should have made the defendants aware that a lawsuit was reasonably foreseeable.

Further, the meaning of and intent behind the second email upon which Piccone relies – the March 2007 email – is virtually inscrutable. Although Piccone contends that the email should have been construed as a genuine complaint about not being hired full-time, the substance and tone of the email wholly undermine that contention. For one thing, the overly-familiar salutation with which the email concludes – "With Love!! Pammie" – belies the serious purpose that Piccone now attributes to it. Even more remarkably, the email references

11

and includes a link to apparently pornographic material. To maintain that this email should have put the defendants on notice of litigation simply strains credulity to the breaking point.

In fact, Piccone alleges that she did not consider suing the Town until she was terminated in January 2008. Coupled with this admission, her assertions about the inferences to be drawn from the two emails are all the more illogical and unconvincing. There is simply no basis in the record to find that the Town anticipated or should have anticipated a lawsuit from Piccone prior to her termination. Rather, the defendants' duty to preserve evidence arose at the earliest when Piccone was terminated.

Piccone has adduced no evidence that any relevant emails were destroyed by defendants after the date of her termination.[7] The alleged acts of spoliation to which Piccone points – the "cleaning" of Deane's computer by Damon Piccone in 2004 and April 2007 – occurred well before that date. Accordingly, Piccone has failed to establish the first element of spoliation, and her motion sanctions is denied.[8]

### B. The Town's Motion

Turning now to the Town's spoliation motion, I note that only four of the emails that the Town claims that Piccone destroyed post-date her termination – the date on which I find that her preservation obligation commenced. (Docket # 50). Each of those four emails was sent from Piccone's personal email account to her Town email account. (*Id*.). The record does not indicate that any of the four emails were sent to any Town employees or any other recipients.

---

[7] In fact, the defendants' duty may not have arisen until Piccone filed her EEOC charge in June 2008. Whether it arose then or several months earlier when she was terminated is immaterial to a resolution of the pending motions.

[8] Having found that Piccone has failed to establish the first element, I decline to address the remaining two elements – culpability and relevance – necessary to prove spoliation.

Therefore, without considering whether Piccone deleted those emails in a culpable manner, I find that none of the emails are relevant because they were not exchanged with any Town officials or employees. *See Residential Funding, Corp.*, 306 F.3d at 108. Moreover, because the Town already possesses its own copies of these four emails, it has not shown any prejudice from Piccone's failure to produce them, and sanctions are thus inappropriate. *Crown Castle USA Inc. v. Fred A. Nudd Corp.*, 2010 WL 1286366, *17 (W.D.N.Y. 2010).

Nor has the Town adduced any credible evidence that Piccone deleted any other emails in violation of her preservation obligation. Of the remaining emails that the Town produced but Piccone did not, no evidence exists that she deleted any after her termination in January 2008. The emails' presence on the Town's server is merely evidence that Piccone had not deleted them from her work account before she was terminated. Prior to that date, Piccone was free to save or delete any emails as she saw fit. Accordingly, the Town has failed to meet its burden to establish that Piccone destroyed any emails that she was obligated to preserve.

For the foregoing reasons, both parties' motions for sanctions for the spoliation of evidence are denied. In my discretion, I further decline to award costs and fees to the Town in connection with defending the motions. Accordingly, I turn next to the Town's motion to compel.

## II. The Town's Motion to Compel

The Town seeks production of Piccone's personal home computer and electronic storage devices on the basis of Piccone's allegedly incomplete production. (Docket # 38 at 5; # 44 at 2). The Town has proposed a protocol under which a mirror-image of Piccone's

computer would be made by a forensic expert and then subject to a limited search by a designated Town employee who would be bound by a confidentiality agreement. (Docket # 44 at 5-7). Finally, the Town also contends that Piccone should bear the cost of that search and the production of any material from her computer. (*Id*. at 7-9).

Piccone contends that the Town has failed to establish any need for her personal computer. Specifically, Piccone states that her home computer does not contain any emails because she accesses her email through a web-based browser that neither stores emails on the hard drive of her computer nor saves deleted emails. (Docket # 34-5 at ¶¶ 4-6). Piccone further contends that she has produced all emails in her possession and that the Town's search thus would be fruitless. (*Id*. at ¶ 7).

The threshold requirement of discoverability under the Federal Rules of Civil Procedure is whether the information sought is "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). To be discoverable, the information "need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. Under Federal Rule of Civil Procedure 34, a party may request that another party "produce and permit the [requesting] party . . . to inspect, copy, test, or sample . . . any . . . electronically stored information." Fed. R. Civ. P. 34(a). As the Advisory Committee has noted, however:

> Inspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy. The addition of testing and sampling to Rule 34(a) with regard to documents and electronically stored information is not meant to create a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances.

14

> Courts should guard against undue intrusiveness resulting from inspecting or testing such systems.

Fed. R. Civ. P. 34 advisory committee's notes to 2006 amendments.

Relevant to whether imaging and inspection of a party's computer hard drive is warranted is "the relationship between the [requesting party's] claims and the [responding party's] computers, and in some cases, whether the [responding party] has fully complied with discovery requests." *Calyon v. Mizuho Sec. USA Inc.*, 2007 WL 1468889, *3 (S.D.N.Y. 2007). Thus, courts have permitted imaging of hard drives where the use of the computer or its files forms the basis of the plaintiff's claims against the defendant. *See, e.g.*, *Genworth Fin. Wealth Mgmt., Inc. v. McMullan*, 267 F.R.D. 443, 447-48 (D. Conn. 2010) (sufficient nexus between claims and need for computer imaging where plaintiff alleged that defendant used the computers to disseminate plaintiff's confidential information); *Ameriwood Indus., Inc. v. Liberman*, 2006 WL 3825291, *5 (E.D. Mo. 2006) (permitting imaging where plaintiff alleged defendants used computers and confidential information to sabotage and divert plaintiff's business); *Balboa Threadworks, Inc. v. Stucky*, 2006 WL 763668, *4 (D. Kan. 2006) (imaging permitted where alleged infringement "occurred through the use of computers to download copyrighted material"). Further, although "a party may not inspect the physical hard drives of a computer merely because the party wants to search for additional documents responsive to the party's document requests," imaging may be justified where the party's discovery responses contain "discrepancies or inconsistencies." *Ameriwood Indus., Inc. v. Liberman*, 2006 WL 3825291 at *4 (internal citations omitted). *See also Genworth Fin. Wealth Mgmt., Inc. v. McMullan*, 267 F.R.D. at 447-48 (imaging permitted where defendant had deliberately spoliated evidence);

*Calyon v. Mizuho Sec. USA Inc.*, 2007 WL 1468889 at *5 (denying motion to compel production of hard drives where plaintiff made no showing that defendant would not conduct an exhaustive forensic search for the requested documents, files and metadata); *Frees, Inc. v. McMillian*, 2007 WL 184889, *2 (W.D. La.) (permitting imaging of defendant's computer where plaintiff alleged that defendant had stolen plaintiff's proprietary computer files), *aff'd*, 2007 WL 13088388 (W.D. La. 2007); *Ameriwood Indus., Inc.*, 2006 WL 3825291 at *3 (imaging permitted on basis of evidence that defendant had failed to produce all responsive email).

Here, the Town seeks to inspect Piccone's home computer in order to ensure that she is not withholding evidence. (Docket # 44 at 3). Specifically, the Town believes that Piccone has "cherry picked" the emails she has produced because "[g]iven the plaintiff's extensive preservation of emails that are allegedly supportive of her case, the virtual absence of emails sent by her to other employees from her production give rise to a strong inference that the plaintiff is either withholding responsive emails or has engaged in spoliation." (Docket # 44 at 2). As discussed above, however, I do not find that the record as it has been developed thus far establishes that Piccone spoliated evidence. Piccone has represented that she produced to her attorney all relevant emails in her possession, and her attorney has affirmed that she has reviewed those emails and produced all those responsive to defendants' document requests. That said, defendants are plainly entitled to explore in discovery, specifically through depositions of Piccone and Damon, the manner in which Piccone identified and saved relevant emails, as well as the circumstances behind Piccone's apparent decision to preserve nearly 200 emails from Deane to her, but not to preserve the majority of emails that she sent to him and other Town employees. If defendants believe that such additional discovery reasonably suggests that Piccone

16

has failed to produce all responsive documents, notwithstanding her representations to the contrary, then they may move at that time for any appropriate relief.

So as to ensure that no relevant documents are lost while that discovery is ongoing, Piccone is directed to have a mirror image of her hard drive made and to turn over that mirror image hard drive to her attorney for safekeeping. Defendants are to bear the cost of the mirror imaging. Piccone is also directed to turn over to her attorney for safekeeping the external disks containing the documents that Damon saved from Piccone's computer that have been referenced in both parties' submissions and at oral argument. Those materials shall be turned over to Piccone's counsel by no later than **September 12, 2010**.

Finally, defendants' motion to compel Piccone to respond to Request No. 4 of their Second Request for Production of Documents is granted insofar as that request seeks "[a]ll documents sent to or received from Damon Piccone concerning emails allegedly removed by him from Barry Deane's computer." (*See* Docket # 24 at Ex. F). Any such documents are plainly relevant and should be produced by no later than **September 30, 2010**.

## CONCLUSION

For the foregoing reasons, both parties' motions for sanctions **(Docket ## 17, 23)** are **DENIED**. In addition, defendants' motion to compel **(Docket # 23)** is **DENIED in PART and GRANTED in PART.**

**IT IS SO ORDERED.**

                                      *s/Marian W. Payson*
                                      MARIAN W. PAYSON
                                    United States Magistrate Judge

Dated: Rochester, New York
        September __3__, 2010