UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PAMELA PICCONE,

                    Plaintiff,

                                        **No. 09-CV-6266(MAT)**
        -vs-                            **DECISION AND ORDER**

TOWN OF WEBSTER; RONALD NESBITT,
Town of Webster Supervisor, In His
Official and Individual Capacity;
and BARRY A DEAN,[1] Highway
Superintendent, In His Official
and Individual Capacities,

                    Defendants.



**I.   Introduction**

        Represented by counsel, plaintiff Pamela Piccone ("Piccone" or

"Plaintiff") commenced this action in the Western District of

New York on or about May 21, 2009. Piccone alleges discrimination

by her former employer, defendant Town of Webster ("the Town"),

along with Webster Town Supervisor Ronald Nesbitt ("Nesbitt") and

Highway Department Superintendent Barry Deane ("Deane"), her

immediate supervisor. In particular, Plaintiff alleges

discrimination in the context of three alleged adverse employment

actions: the denial of "step" salary increases prior to her

receiving a permanent, part-time position in January 2006; the

failure to convert her part-time position to a full-time position;

---

[1]
        Pleadings filed by Defendants indicate that this defendant's proper name
is "Barry A. Deane".

and her termination in January 2008. Plaintiff also alleges discrimination and harassment based on her gender, age, national origin, and ethnicity in violation of the Constitution's Equal Protection Clause and the New York State Human Rights Law. She does not allege claims under either Title VII of the Civil Rights Act of 1964 ("Title VII") or the Age Discrimination in Employment Act ("ADEA").

Presently pending before the Court is the Town's motion for summary judgment (Dkt #55) dismissing the complaint. Also pending are Defendants' motion to strike (Dkt #70) the Declaration of Kathleen Roeszies dated October 5, 2010; and Plaintiff's cross motion to strike (Dkt #73) the Declaration of Kathy Tanea dated October 22, 2010. For the reasons that follow, the Town's motion for summary judgment is granted. Plaintiff's motion to strike is denied. Defendants' motion to strike likewise is denied.

## II.  Factual Background

On May 3, 1995, Plaintiff was appointed as an "on-call or substitute" part-time clerk for the Town of Webster. Declaration of Ronald Nesbitt dated September 3, 2010 ("9/3/10 Nesbitt Decl."), ¶3 (Dkt #56).  From 1995 to 2006, Plaintiff worked on and off as a temporary part-time secretary in the Town's Highway Department. Her position was neither permanent nor regular. Declaration of Barry Deane dated September 3, 2010 ("9/3/10 Deane Decl."), ¶3 (Dkt #57). Rather, the Highway Department would contact her when extra help

was needed or to fill in for permanent employees who might be out on vacation or for other reasons. Id. (Dkt #57). On occasion, Plaintiff might have worked several months full time to fill in for an employee who was on medical leave, while at other times, she would not have been called for many months at a time because there was no need for her services. Id. (Dkt #57). During this time period, Plaintiff also occasionally filled in on a similar basis for absent clerical staff members at other Town offices, including that of then-Town Supervisor Cathryn Thomas. Id. (Dkt #57).

Plaintiff's duties included answering telephone calls, maintaining files and entering data into the tracking system used for drainage jobs, and assisting with paperwork (e.g, environmental compliance reports). 9/3/10 Deane Decl., ¶4 (Dkt #57).

The Webster Town Board created the Plaintiff's permanent, part-time position on Deane's recommendation in January 2006. Id., ¶5 (Dkt #57). In 2003, housing starts within the Town reached a high of 356 and remained well above 200 per year for both 2004 and 2005. 9/3/10 Nesbitt Decl., ¶¶ 6-7 (Dkt #56). Prior to that time, no secretary or other clerical staff had been assigned exclusively to support drainage operations. 9/3/10 Deane Decl., ¶5 (Dkt #57). Instead, the Drainage Foreman was responsible for fielding his own phone calls and completing paperwork associated with drainage operations. Id., ¶5 (Dkt #57). Deane concluded, however, that creating a permanent position for Piccone was justified given the

large volume of new housing starts and other development that the Town was experiencing at the time, which was generating substantial drainage-related work. Id., ¶5 (Dkt #57).   The creation of Plaintiff's permanent part-time position was intended to free the Drainage Foreman from performing clerical tasks so that he would have more time to devote to other aspects of his work. Id., ¶5 (Dkt #57).

After being instated in her permanent part-time position, Plaintiff approached Deane to request a raise from $11.72 to $16.50 per hour. 9/3/10 Deane Decl., ¶7 (Dkt #57). Deane broached the matter with the Town Supervisor, Nesbitt, and other Town Board Members on her behalf. Id. (Dkt #57).   The Town subsequently approved raising her salary 28% to $15 per hour, which was in line with the pay of other permanent part-time employees in comparable positions. Id. (Dkt #57).

At the time the Town created Plaintiff's permanent, part-time drainage position, Deane anticipated that the Town would authorize converting the position to full-time within the next year. 9/3/10 Deane Decl., ¶9 (Dkt #57). Deane believed that the Drainage Foreman would require additional clerical assistance given the substantial increase in his responsibilities attributable to the new construction that the Town had experienced in recent years. Id. (Dkt #57). Deane, however, lacked the authority to create the full-time position discussed above. Only the Town Board was

-4-

authorized to create an employment position and designate funding for it. 9/3/10 Nesbitt Decl., ¶7 (Dkt #56). Plaintiff admits that Nesbitt advised her that Deane did not have the power to create the full-time drainage position. 9/3/10 Feinstein Decl., ¶13 & Ex. I (Excerpt from Plaintiff's Deposition) (Dkt #58).

In early 2007, Deane approached Nesbitt and other Town Board Members for funding to convert Plaintiff's part-time position to full-time. 9/3/10 Deane Decl., ¶9 (Dkt #57). However, Deane was advised that it would be impossible to justify converting the part-time drainage position to full-time, given the marked downturn in construction activity. Id. (Dkt #57).

During the first week of July 2007, Deane and other Town department heads attended a meeting with Nesbitt, who advised them of the need to reduce the Town's payroll. 9/3/10 Deane Decl., ¶10 (Dkt #57). Nesbitt cited the substantial decline in new construction within the Town as the reason for the need for a reduction-in-force. Id. (Dkt #57). During 2006, total housing starts fell to 159. 9/3/10 Nesbitt Decl., ¶¶ 6-7 (Dkt #56).

Deane indicates that Nesbitt repeated this directive on numerous occasions over the next few months as the end of the fiscal and calendar years approached. 9/3/10 Deane Decl., ¶10 (Dkt #57); see also Declaration of Barry Deane dated October 22, 2010 ("10/22/10 Deane Decl."), ¶12 (Dkt #67) ("[T]he Town Supervisor was putting pressure on me and other Department heads to

decrease our staff and the plaintiff's part-time position was the most logical position to eliminate as it had only been recently created in response to the construction boom, which was now over."). Thus, the full-time drainage position sought by Plaintiff never was created, as Plaintiff admitted during her deposition. Declaration of Joshua Feinstein, Esq. dated September 3, 2010 ("9/3/10 Feinstein Decl."), ¶11 & Ex. G (Excerpt from Plaintiff's Deposition) (Dkt #58). Plaintiff continued to work in her part-time permanent position.

According to Deane, on December 24, 2007, Plaintiff engaged in a public shouting match with Kathleen Roeszies ("Roeszies"), a secretary, who has since retired from her full-time, unionized secretarial position. The altercation occurred at the Highway Department and was overheard by Deane, as well as other employees and visitors. 9/3/10 Deane Decl., ¶11 (Dkt #57). Plaintiff disputes Deane's characterization of the incident, and states that she did not raise her voice.

A few days later, Deane recommended the elimination of Plaintiff's position.[2] According to Deane, there were several reasons for this decision. Given the decline in local construction, the circumstances that had originally justified the position no

---

[2]
Eventually the Town was able to identify two employees whose positions were no longer required given the downturn in new construction: Plaintiff and Real Property Appraiser, Mark Schnorr, who was thirty-nine years old at the time. Schnorr is not of Italian descent. 10/22/10 Nesbitt Decl., ¶9 (Dkt #65).

longer existed. 9/3/10 Deane Decl., ¶12 (Dkt #57); see also
10/22/10 Deane Decl., ¶4 (Dkt #67). In addition, some of
Plaintiff's responsibilities had been eliminated by the Highway
Department's implementation of an electronic database for tracking
drainage related work, making it easier for the Drainage Foreman to
perform the functions that had been assigned to Plaintiff's
position. 9/3/10 Deane Decl., ¶12 (Dkt #57).

Finally, Plaintiff's altercation with Roeszies was a factor in
Deane's decision to terminate her. Id. (Dkt #57); see also 10/22/10
Deane Decl., ¶¶ 3-4 (Dkt #67). Deane explained that in his
opinion, Roeszies was one of the few remaining employees with whom
Plaintiff had a good relationship. Their argument led Deane to
conclude that Plaintiff had antagonized several of her co-workers
to a point where her removal would be beneficial to maintaining a
positive work environment. 9/3/10 Deane Decl., ¶12 (Dkt #57); see
also 10/22/10 Deane Decl., ¶¶ 3-4 (Dkt #67).

Plaintiff was terminated on January 2, 2008. The Town's
Highway Department never replaced Plaintiff. Instead, the Drainage
Foreman reabsorbed some functions associated with Plaintiff's
position while the Highway Department's receptionist took over
others (in addition to her existing duties). 9/3/10 Deane Decl.,
¶13 (Dkt #57).

Deane avers that neither Plaintiff's age, nor any other
improper factor such as her gender or ethnicity, ever influenced

any of his actions with respect to her. 9/3/10 Deane Decl., ¶15 (Dkt #57). Deane states that he only reluctantly concluded that her termination was necessary, and points to a number of actions he took in order to advance Plaintiff's career. For instance, when the permanent part-time drainage position was created, he hired her to fill it. He also lobbied on her behalf to obtain a substantial pay raise; encouraged her repeatedly to take Civil Service examinations so that she could qualify for full-time employment; and attempted to persuade the Town Board to convert her position to full-time. Id. (Dkt #57).

### III. Procedural History of the Instant Litigation

After Plaintiff pursued her administrative remedies through the Equal Employment Opportunity Commission ("EEOC"), she filed the a complaint in this Court. Plaintiff's first cause of action alleges a hostile work environment, harassment, and age discrimination in violation of the Equal Protection Clause of the United States Constitution, as well as the First, Fourth, and Fourteenth Amendments to the Constitution. The second cause of action states that Plaintiff was subjected to sexual harassment and a hostile work environment in violation of the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law § 290 et seq. As her third cause of action, Plaintiff alleges age discrimination in violation of the NYHRL. Finally, Plaintiff's fourth cause of action alleges that the Town promulgated policies and procedures by which the

individual defendants Nesbitt and Deane intentionally and maliciously deprived Plaintiff of her civil rights.

In its answer, the Town asserts numerous defenses to Plaintiff's claims, including that a number of the alleged unlawful acts fall outside the applicable statute of limitations. The Town states that any employment action taken towards Plaintiff was taken for legitimate non-discriminatory and non-retaliatory business reasons. The Town asserts that it does not condone or approve of unlawful discrimination, harassment, or retaliation, and did not ratify any acts of unlawful discrimination, harassment, or retaliation. The Town states that Plaintiff unreasonably failed to take advantage of the Town's complaint procedure, such that no notice was given by Plaintiff of the alleged harassment or discrimination so as to enable the Town to commence an investigation and address her complaints. According to the Town, the individual defendants' actions were privileged, discretionary determinations, and made within the scope of their duties such that those defendants (Nesbitt and Deane) are absolutely and otherwise immune from suit and liability.

Extensive discovery in this matter ensued and was ably presided over by Magistrate Judge Payson. Presently pending before the Court is Defendants' motion for summary judgment dismissing the complaint (Dkt #55). Also pending are cross-motions to strike certain witnesses' declarations: Plaintiff has moved to dismiss the

declaration of Kathy Tanea, the director of finance, offered to refute Plaintiff's allegation that she was entitled to "step" pay increases. (Dkt #73). Defendant has opposed that motion and has moved to strike the declaration of Kathleen Roeszies, the co-worker with whom Deane observed Plaintiff have a loud verbal confrontation. (Dkt #70). Plaintiff has opposed Defendant's motion for summary judgment and motion to strike the Roeszies Declaration.

For the reasons that follow, Plaintiff's motion to strike the Tanea Declaration is denied. Defendants' motion to strike the Roeszies Declaration is denied. Defendants' motion for summary judgment is granted in its entirety.

## III. The Motions to Strike

### A.    Applicable Legal Standard

Under Rule 37(c)(1) of the Federal Rules of Civil Procedure, a party who fails to identify a witness under Fed. R. Civ. P. 26(a) or (e) is precluded from relying on that witness's testimony "unless the failure [to identify] was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). Rule 37(c) is designed to prevent the "sandbagging" of an opposing party with new evidence. See CSC Holdings, Inc. v. Berube, No. 01 Civ. 1650(DRH), 2004 WL 3541331, at *3 (E.D.N.Y. July 7, 2004) (Rule 37(c)(1) is "designed to avoid . . . gamesmanship . . . [and] . . . 'to provide a strong inducement for disclosure of Rule 26(a) material.'") (quoting Hein v. Cuprum, S.A., de C.V., 53 Fed. Appx. 134, 136 (2d Cir. 2002)).

"However, '"the severity of this exclusion is softened by the proviso that the penalty should not apply if the offending party's failure to disclose was "substantially justified."'" <u>Berube</u>, 2004 WL 3541331, at *3 (quoting <u>Hinton v. Patnaude</u>, 162 F.R.D. 435, 439 (N.D.N.Y. 1995)).  Even if "the failure was not substantially justified the exclusion should not apply if the failure was 'harmless.'" <u>Id.</u> (quoting <u>Hinton</u>, 162 F.R.D. at 439).

In considering whether preclusion is required, courts consider four factors: 1) the importance of the testimony; 2) the reason for the party's failure to disclose the witness earlier; 3) the prejudice to the opposing party; and 4) the possibility of a continuance. <u>Design Strategy, Inc. v. Davis</u>, 469 F.3d 284, 296 (2d Cir. 2006) (citing <u>Patterson v. Balsamico</u>, 440 F.3d 104, 117 (2d Cir. 2006)).  Rule 37(c)(1) by its terms does not require a showing of bad faith, and the Second Circuit has expressly held that such a requirement should not be read into the Rule. <u>Id.</u>

### B.    Application to the Parties' Motions to Strike

#### 1.    Defendants' Motion to Strike the Roeszies Declaration

Defendants have moved to strike the declaration of Kathleen Roeszies dated October 5, 2010 (Dkt #63-11) ("the Roeszies Decl."), because Plaintiff failed to disclose Roeszies as a witness until submitting her declaration in opposition to the Town's summary judgment motion, months after discovery closed.

Plaintiff has not attempted to provide an excuse for waiting until after the Town moved for summary judgment to disclose Roeszies. Plaintiff likewise does not dispute that she has known that Roeszies was likely to have discoverable information that she might use in support of her claims. Plaintiff has been on notice since at least the Equal Employment Opportunity Commissions conciliation process, which occurred prior to Plaintiff's filing this lawsuit, the shouting incident with Roeszies was a factor in her termination. Plaintiff argues that it is the Town's responsibility to have anticipated Roeszies' testimony concerning an issue that the Town did not suspect that Plaintiff was attempting to contest, i.e., whether both Roeszies and Plaintiff were equally at fault for the shouting incident that Deane considered as one of the factors warranting her termination.

Ultimately, however, the Court has determined to deny the motion to strike as Roeszies' testimony does not change its analysis with regard to the outcome of Defendants' summary judgment motion. See CSC Holdings, Inc., 2004 WL 3541331, at *3 ("As the Court finds nothing in Mrs. Berube's testimony to contradict or alter the essential facts of the case, her affidavit sheds no new light. She corroborates the purchase, receipt, and use, however satisfying, of the decoding equipment. . . .[S]uch evidence does not create a genuine issue of material fact as to the claims in the complaint. For this reason, even when considering Mrs. Berube's

-12-

affidavit, Plaintiff's summary judgment motion still must be granted. . . . Therefore the Court finds no harm in admitting the affidavit. On that basis, keeping in mind Defendant's <u>pro</u> <u>se</u> status, the motion to strike is denied.").

> ### 2. **Plaintiff's Motion to Strike the Tanea Declaration**

Plaintiff argues that Defendants failed to timely disclose witness Kathy Tanea, noting that the first time Defendants referred to Tanea was in their reply memorandum of law to Plaintiff's opposition to the summary judgment motion. Plaintiff asserts that Defendants were on notice of Plaintiff's testimony, since May 26, 2010, regarding Jan Clemens' communication to her that she was entitled to biennial "step" pay increases.

As with the Roeszies Declaration, the Court has determined to deny the motion to strike the Tanea Declaration. Tanea's testimony does not change its analysis with regard to the outcome of Defendants' summary judgment motion because the claims as to which Tanea's testimony is relevant are outside the relevant statute of limitations, as discussed more fully, <u>infra</u>.

## IV. **Summary Judgment Standard**

Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56. Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment is warranted when the nonmovant has no evidentiary support for an essential element on which it bears the burden of proof. Celotex, 477 U.S. at 322-23; see also Silver v. City Univ. of N.Y., 947 F.2d 1021, 1022 (2d Cir. 1991). The "mere existence of a scintilla of evidence" supporting the non-moving party's cause is insufficient. Anderson, 477 U.S. at 252. Nor may summary judgment be defeated merely on the basis of a "metaphysical doubt" or "conjecture or surmise." Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-moving party may not rely on evidence that is merely colorable, conclusory, or speculative but must come forward with "concrete evidence from which a reasonable jury could return a verdict in [his or her] favor." Anderson, 477 U.S. at 256.

Courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits

and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) (citations and internal quotations omitted). However, a plaintiff may not defeat a motion for summary judgment merely by relying upon "purely conclusory allegations of discrimination, absent any concrete particulars." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985), cert. denied, 474 U.S. 829 (1986).

The party opposing summary judgment may not create a triable issue of fact "merely by submitting an affidavit that disputes his own prior sworn testimony." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996) (citations omitted). Rather, such affidavits are to be disregarded. Mack v. United States, 814 F.2d 120, 124 (2d Cir. 1987) (citations omitted).

## IV.   The NYHRL and Discrimination Based Upon Age, Gender, and National Origin

The NYHRL makes it unlawful for an employer "to discriminate against [an] individual in promotion, compensation or in terms, conditions, or privileges of employment, because of such individual's age." N.Y. Exec. Law § 296 3-a. Although there are differences between the NYHRL and the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., age discrimination suits brought under the NYHRL are subject to the same analysis as claims brought under the ADEA. Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) (citation

omitted). ADEA claims are analyzed under the same burden shifting framework as claims brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. 239 F.3d at 466 (citation omitted). Thus, the Court analyzes an age discrimination claim brought under the NYHRL as it would any other Title VII claim. Id.; see also Song v. Ives Laboratories, Inc., 957 F.2d 1041, 1046 (2d Cir. 1992) (citing, inter alia, Matter of Miller Brewing Co. v. State Div. of Human Rights, 66 N.Y.2d 937, 939 (N.Y. 1985)).

Under the Title VII framework, set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), a plaintiff must first establish a prima facie case by showing that (1) she is a member of the protected class; (2) she is qualified for her position; (3) she has suffered an adverse employment action; and (4) the circumstances surrounding that action give rise to an inference of age discrimination. 411 U.S. at 802. Once the plaintiff has made out a prima facie case, the burden of production shifts to the employer to offer a legitimate, nondiscriminatory business rationale for its actions. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254-55 (1981). If the employer does so, the presumption of discrimination dissipates and the burden shifts back to the plaintiff to prove that the employer's stated reasons are merely pretextual and that age discrimination was the true reason

for the adverse employment action. <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 510-11 (1993).


**V.    Analysis of the Complaint**

   **A.   Age Discrimination Under the Equal Protection Clause (First Cause of Action) and New York Human Rights Law, N.Y. Exec. Law § 290 <u>et seq.</u> (Third Cause of Action)**

Plaintiff asserts that she was discriminated on the basis of her age in regard to three adverse employment actions: (1) the denial of "step" pay increases, (2) the denial of transfer to a full-time position, and (3) her termination.

   **1.   The claims relating to the denial of "step" pay increases are outside the applicable three-year statute of limitations.**

Plaintiff asserts that she was unlawfully denied the opportunity to be considered for "step" salary increases, i.e., seniority- and performance-based raises that union members and other qualified employees are eligible to receive on a periodic basis. According to the Town, its longstanding practice is not to grant step increases to non-permanent or "casual" part-time employees, who are not guaranteed regular hours and who work for the Town on an irregular basis. Nesbitt Decl., ¶4 (Dkt #56). Over the fifteen years Deane served as Highway Superintendent, the Highway Department had numerous temporary part-time employees, who worked on a sporadic, as needed, basis-as Plaintiff did until she was hired in a permanent position in 2006. None of these employees

-17-

were considered for, or granted, step increases. Deane Decl., ¶8 (#57).

Plaintiff contends that "[b]oth scheduled part-time workers and casual part-time workers are scheduled for annual performance reviews and are eligible for step increases on a biennial basis." Plaintiff's Counter-Statement of Facts ("Pl. Counter-Stmt.") at 5, ¶26 (Dkt #63-1) (citing Vol. II, Ex. B (Policy for Part-Time Employees) (Dkt #63-6), Vol. II, Ex. G (Step-Increase Policy) (Dkt #63-6)). Plaintiff contends that a co-worker in the payroll department, Jan Clemens ("Clemens"), told her that she was entitled to receive "step" increases.

In opposition, the Town asserts that Exhibits B and G in Plaintiff's Volume II are unauthenticated and have been superseded, and that Clemens was a low-level employee without authority to opine about other employees' salary raises. See Tanea Decl., ¶5 (Dkt #66). Tanea, the Finance Director for the Town, states,

> Those documents [submitted by Plaintiff] are reflective at most of prior policies concerning step increases. Again, ever since I began as Finance Director in 1998, the Town's policy has been not to consider non-permanent part-time employees—such as the plaintiff—for step increases.

Tanea Decl., ¶5 (Dkt #66).

To the extent that a factual issue is created by these competing allegations, Defendants argue that it need not be resolved because any discrimination claims based on the Town's alleged failure to consider Plaintiff for step increases fail for

the independent reason that they are beyond the three-year limitations period.  The Court agrees.

Assuming for the sake of argument that Plaintiff was entitled to receive step increases as a nonpermanent employee, she would have been considered for them once every two years on the anniversary date of her initial appointment. Plaintiff received her temporary, "casual" part-time appointment on May 3, 1995, and was placed in a permanent part-time position in January 2006. Her last review date as a temporary, "casual" employee therefore occurred on May 3, 2005, well over three years before she commenced this action on May 28, 2008. See Purdy v. Town of Greenburgh, 166 F. Supp.2d 850, 863 (S.D.N.Y. 2001) ("In New York, a three-year statute of limitations applies to actions brought pursuant to both [42 U.S.C.] § 1983 and the NYHRL.") (citing Owens v. Okure, 488 U.S. 235, 249-51 (1989); N.Y. Civ. Prac. Law & Rules § 214(2)). Plaintiff's claims regarding discrimination in the alleged denial of "step" pay increases are barred by the statute of limitations and must be dismissed.

### 2. With regard to the failure-to-appoint claim, Plaintiff has failed to establish a prima facie case under the NYHRL.

As noted above, the existence of an adverse employment action is a necessary element of a prima facie case of age discrimination under the NYHRL. Plaintiff alleges that the Town discriminated against her by not appointing her to a full-time position in the

Drainage Department, contrary to promises allegedly made by Deane, her supervisor. Plaintiff, however, admits that this position never existed. See Pl. Memo. at 7 (Dkt #63-3); 9/3/10 Feinstein Decl., ¶11 & Ex. G (Dkt #58). Thus, she must demonstrate that the Town intended to create the position but then did not because Plaintiff was a member of a protected class. See Williams v. R.H. Donnelley, Inc., 199 F. Supp.2d 172, 178-79 (S.D.N.Y. 2002) ("Plaintiff's claim that defendant failed to create a management position in November 1999 is likewise flawed. Without some evidence 'that an employer intended to create a position but then did not because the applicant was [a member of a protected class],' the failure to create a position for a disgruntled employee does not rise to the level of an adverse employment action.") (quoting Brooks v. Hevesi, No. 95 Civ. 3209, 1998 WL 32712, at *2 n.2 (S.D.N.Y. Jan. 29, 1998) and citing Barakat v. Taco Bell, Inc., 970 F. Supp. 634, 638 (N.D. Ill. 1997) (granting summary judgment dismissing failure-to-promote claim where the defendant "decided not to create the position . . . [and the] [p]laintiff [did] not provide any evidence that this decision was made to keep employees of his racial, ethnic, or religious background out of upper management")).

Plaintiff claims that her supervisor, Deane, promised to convert her part-time drainage position to a full-time one. There is no dispute that Deane lacked authority to create the full-time

position. Only the Town Board had this ability. The Town Board concluded that converting Plaintiff's position to full time could not be justified for budgetary reasons.

To review the background briefly, Plaintiff was moved from the temporary part-time position to a permanent part-time position in 2006. Deane justified creating the permanent position based on the large volume of new housing starts and other development the Town recently had been experiencing. Plaintiff's part-time position was intended to free the Town's Drainage Foreman from having to perform clerical tasks in order to could focus on other aspects of his job.

Then, in early 2007, Deane approached Town Board members about converting Plaintiff's permanent part-time position to a permanent full-time position. Defendants aver that throughout 2006, total housing starts in Webster had fallen to 159 from a high of 356 in 2003. The Town Board therefore advised Deane that there was no justification for converting Plaintiff's Drainage Department position to full-time and it was pointless for him to continue to seek authorization to do so. See 9/3/10 Deane Decl., ¶¶5, 15 (Dkt #57); 9/3/10 Nesbitt Decl., ¶7 (Dkt #56).

The Town thus has adduced legitimate, non-discriminatory reasons for not creating the full-time position, and Plaintiff has "offer[d] no evidence suggesting that the decision not to create a position for [her] . . . was motivated by anything other than routine budgetary constraints. . . ." Williams, 199 F. Supp.2d at

179 ("[P]laintiff has utterly failed to demonstrate that she was the victim of an adverse employment action that was the product of discriminatory intent. . . . [S]ummary judgment must be granted in favor of defendant with respect to this issue."); see also Cordes v. Gaymar Indus., Inc., 205 F.3d 1322, 2000 WL 232136, at *1 (2d Cir. 2000) ("Gaymar Industries offered legitimate business reasons for firing Cordes, including the implementation of a company-wide reduction in force and the relative ease with which Cordes' duties could be distributed among other employees as these duties had diminished over time. . . . Regardless of whether Cordes' evidence challenged the truthfulness of Gaymar Industry's stated reasons for firing him, it provided no basis on which a factfinder could reasonably find that he was fired because of his age. Summary judgment was properly granted."). Because she did not suffer "a materially adverse change" in the terms and conditions of her employment attributable to the Town's consideration of an improper factor, she cannot show under McDonnell Douglas that she suffered an adverse employment action.

> **3.) Plaintiff has failed to establish a triable issue of fact with regard to whether her termination was based on a discriminatory animus.**

Plaintiff has established the first three elements of a prima facie case with regard to the termination decision. First, she is older than forty years of age, and thus falls within the class protected by the NYHRL. Second, she was qualified for the position

in that she performed it to the Town's satisfaction for a number of years. As noted above, Plaintiff was moved from a temporary to a permanent position, and her immediate superior, Deane, successfully lobbied for her to receive a substantial pay raise. Third, the termination qualifies as an adverse employment action. Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 141 (2000).

To survive summary judgment, Plaintiff must adduce admissible evidence sufficient to permit a reasonable jury to conclude that the Town's proffered reasons are false and pretextual—the fourth element of a prima facie case. In other words, Plaintiff must demonstrate that her "age . . . 'actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome." Reeves, 530 U.S. at 141 (quotation omitted).

Defendants cite as their primary reason for terminating Plaintiff the construction slow-down being experienced by the Town. Deane indicates that beginning in July 2007, Supervisor Nesbitt repeatedly urged him and other Town departmental heads to identify positions to eliminate, given the substantial slow-down in new construction. 9/3/10 Nesbitt Decl., ¶8 (Dkt #56). Eventually, the Town identified two employees whose positions were no longer required given the down turn in new construction: Plaintiff, and a white, thirty-nine-year-old male Real Property Appraiser.  9/3/10 Nesbitt Decl., ¶9 (Dkt #56).

-23-

The Town asserts the circumstances that had justified creating Plaintiff's position no longer existed, in light of the decline in local construction and the corresponding decrease in the Drainage Foreman's work load. In addition, the Highway Department had implemented an electronic database for tracking drainage-related work, which made it easier for the Drainage Foreman to reabsorb some functions that had been assigned to Plaintiff.

There is no dispute that the Highway Department never hired a replacement to fill the permanent part-time position from which Plaintiff was terminated. Instead, the Highway Department receptionist took over functions previously performed by Plaintiff while continuing to perform her existing duties.

Plaintiff contends, without support, that there is no proof that housing starts and construction in the Town had declined or that the Town faced budgetary restraints, and therefore the Town's proffered budget-related reason for terminating her was pretextual. See Pl. Mem. at 8-9 (Dkt #63-3). The Court agrees with Defendants that Supervisor Nesbitt had the requisite personal knowledge to testify regarding what factors influenced the Town Board's decision-making. Plaintiff has not adduced evidence to undermine or contradict the statistics submitted by Defendants regarding the decrease in new construction. Defendants correctly point out that despite conducting substantial discovery in this case, Plaintiff failed to uncover any evidence to support her allegations of

fabrication by the Town with regard to the budgetary situation. See
Lane v. Sotheby Parke Bernet, Inc., 758 F.2d 71, 72 (2d Cir. 1985)
(per curiam)("Finding no basis in the record for Lane to have
continued this action after discovery was completed and it being
evident that he lacked sufficient evidence to establish even a
prima facie case . . . , we affirm as to the disposition of
plaintiff's civil rights action.") (internal citations omitted;
citing Kahn v. Pepsi Cola Bottling Group, 547 F. Supp. 736, 740
(E.D.N.Y. 1982) (summary judgment appropriate where plaintiff
failed to make prima facie showing of discrimination and defendant
offered evidence of legitimate nondiscriminatory reasons for
discharge); McClain v. Mack Trucks, Inc., 532 F. Supp. 486, 489
(E.D. Pa. 1982) (entering summary judgment for employer where
plaintiff failed to demonstrate that employer's reason for
discharge was pretextual; disregarding conclusory assertion that
employee was "racially harassed"), aff'd, 707 F.2d 1393 (3d Cir.
1983)).

     As with the failure-to-appoint claim, the Town has adequately
met its burden of adducing a non-discriminatory reason for its
decision to terminate Plaintiff. The Town has explained that the
primary reason was financial-specifically, the need to trim the
budget and reduce staff due to a slow-down in new construction. The
Second Circuit has held that "employment decisions driven by
factors that are empirically intertwined with age are not

discriminatory so long as they are motivated by 'some feature other than the employee's age'." <u>Criley v. Delta Air Lines</u>, 119 F.3d 102, 105 (2d Cir.1997) (citations omitted).

Plaintiff has not successfully refuted that the Town has articulated legitimate, non-discriminatory reasons for the adverse employment actions about which she complains. To survive a motion for summary judgment, Plaintiff must adduce admissible evidence sufficient to permit a reasonable factfinder to conclude that the Town's asserted reasons are false and pretextual. Here, Plaintiff has not done so.

Weighing the evidence proffered by both parties, and drawing all inferences in favor of Plaintiff, the Court finds that no reasonable jury could conclude that the Town acted with discriminatory intent. <u>See</u> <u>Elliott</u>, 172 F. Supp.2d at 403 ("Plaintiff has marshaled no credible evidence whatsoever of any age-related comments or other specific evidence of animus on the part of his employers.") (citing <u>Schnabel</u>, 232 F.3d at 91 (noting that summary judgment for defendant was appropriate because plaintiff's case was far weaker than that of the plaintiff in <u>Reeves</u>, in part because he "failed to offer any evidence that he was subjected to any age-related comments or criticisms on the job.")).

**B.     Harassment and Hostile Work Environment under the NYHRL, the Equal Protection Clause, and 42 U.S.C. § 1983 (First and Second Causes of Action)**

**1.     Applicable Legal Standards**

Plaintiff does not assert her harassment hostile work environment claims under Title VII. The Second Circuit has explained that a plaintiff cannot use 42 U.S.C. § 1983 to circumvent Title VII's limits on damages and shorter period of limitations. Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 143 (2d Cir. 1993) ("[P]laintiff cannot use Section 1983 to gain perceived advantages not available to a Title VII claimant . . . ."). However, "a plaintiff may assert a claim under Section 1983 if some law other than Title VII is the source of the right alleged to have been denied." Id.

Plaintiff grounds her Section 1983 claims on allegations that Defendants created a hostile work environment in violation of the Equal Protection Clause and the NYHRL. Because the Equal Protection Clause and the NYHRL are the sources of the distinct rights alleged to have been denied, Plaintiff may assert her claims under 42 U.S.C. § 1983. Carrero v. New York City Housing Auth., 890 F.2d 569, 575 (2d Cir. 1989)(Title 42 U.S.C., § 1983 claim not precluded by Title VII when based on substantive rights distinct from Title VII).

The standard for evaluating Plaintiff's hostile work environment claim under the NYHRL is the same as under Title VII.

Durant v. A.C.S. State and Local Solutions, Inc., 460 F. Supp.2d
492, 499 (S.D.N.Y. 2006). The legal standard governing Plaintiff's
hostile work environment claim under the Equal Protection Clause is
similar to that under Title VII. However, an additional element is
required-namely, that the harassment arose under color of state
law. Lange, 213 F. Supp.2d at 423.

To prevail on her hostile work environment claim, Plaintiff is
required to show "(1) that her workplace was permeated with
discriminatory intimidation that was sufficiently severe or
pervasive to alter the conditions of her work environment, and
(2) that a specific basis exists for imputing the conduct that
created the hostile environment to the employer." Murray v.
New York Univ. College of Dentistry, 57 F.3d 243, 249 (2d Cir.
1995) (citations omitted); see also, e.g., Van Zant v. KLM Royal
Dutch Airlines, 80 F.3d 708, 715 (2d Cir. 1996). This standard has
both "objective and subjective elements: the misconduct shown must
be severe or pervasive enough to create an objectively hostile or
abusive work environment, and the victim must also subjectively
perceive that environment to be abusive. Alfano v. Costello, 294
F.3d 365, 374 (2d Cir. 2002) (internal quotation and citation
omitted).

"As a general rule, incidents must be more than 'episodic;
they must be sufficiently continuous and concerted in order to be
deemed pervasive.'" Id. (quoting Perry v. Ethan Allen, Inc., 115

F.3d 143, 149 (2d Cir. 1997) (citation and internal quotation marks omitted in Alfano)). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." Id. (citing Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999); Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) ("We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment . . . .")). In the context of Title VII, the Supreme Court explained that it "does not prohibit 'genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex.'" Faragher, 524 U.S. at 788 (quoting Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81 (1998)). The Supreme Court has emphasized that "[a] recurring point in [its] opinions [on workplace harassment] is that 'simple teasing,' Oncale, 523 U.S. at 81), offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" 524 U.S. at 788.

### 2.  Alleged Incidents of Harassment

### a.  Offensive Emails from Deane

Plaintiff contends that certain emails received from Deane, her supervisor, constituted harassment and gave rise to a hostile work environment. Defendants admit that for a number of years, Plaintiff was one of several colleagues at the Town with whom Deane

exchanged non-work related emails. Defendants further admit that the emails often included jokes and off-color topics. 9/3/10 Deane Decl., ¶18 (Dkt #57).

Although Plaintiff, in her memorandum of law, strenuously argues that she found the emails vile and was coerced into sending and receiving them, she testified at her deposition that the email exchange with Deane was voluntary, and that she could only recall two emails from Deane that she found offensive. See 9/3/10 Feinstein Decl. (Dkt #58) & Exs. Q, V & W (Excerpts from Plaintiff's Deposition Testimony) (Dkt #58-2). "It is beyond cavil that 'a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that contradicts the affiant's previous deposition testimony.'" Bickerstaff v. Vassar Coll., 196 F.3d 435, 455 (2d Cir. 1999) (quoting Hayes v. New York City Dep't of Corrs., 84 F.3d 614, 619 (2d Cir. 1996) (citations omitted in original)). Any allegations in Plaintiff's opposition papers regarding the emails, insofar as they contradict her deposition testimony, do not create a genuine issue of material fact. Id.

Moreover, taking Plaintiff's deposition testimony as true that she found two emails offensive, no juror could rationally find that such a small number of missives could have created a pervasive atmosphere of "intimidation, ridicule and insult[,]" Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986), adequate to alter the

terms of the Plaintiff's employment. See Ezuma v. City Univ. of N.Y., 665 F. Supp.2d 116, 127 (E.D.N.Y. 2009) ("No reasonable jury could find that the handful of disconnected acts that he suffered were 'severe or pervasive' enough that a reasonable person would find his environment hostile or abusive.") (citing Gregory v. Daly, 243 F.3d 687, 691-92 (2d Cir. 2001)); see also Ezuma 665 F. Supp.2d at 127 ("These are not 'environmental' allegations. Plaintiff alleges discrete acts, undertaken by different individuals over considerable periods of time. They did not alter his work environment on a day-to-day basis, and no one or combination of them was so severe that it altered his working conditions.") (citing Alfano v. Costello, 294 F.3d at 374 ("incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive")).

In addition, Plaintiff admitted that she might have initiated one of the allegedly offensive email exchanges. Feinstein Decl. ¶¶27-29 (Dkt #58) & Exs. W, X & Y (Excerpts of Plaintiff's Deposition Testimony) (Dkt #58-2). This seriously calls into question Plaintiff's contention that she subjectively perceived conduct as abusive, which is a requirement to finding the conduct actionable. See Alfano, 294 F.3d at 374 ("The correct inquiry is whether [the plaintiff] by her conduct indicated that the alleged sexual advances were unwelcome[.]"); Zhao v. Kaleida Health, 04-CV-467, 2008 WL 346205 (W.D.N.Y. Feb. 7, 2008) (dismissing on

summary judgment plaintiff's claim of a hostile work environment alleging a series of sexual advances culminating in sexual assault in light of emails demonstrating that sexual conduct by defendant was welcome).

### b.    Ageist Statements by Superintendent Deane

Plaintiff contends that Deane constantly referred to her and several other women around the office as "old hens." The Second Circuit has held that "without more", "stray remarks, even if made by a decisionmaker, do not constitute sufficient evidence to make out a case of employment discrimination." Danzer v. Norden Systems, Inc., 151 F.3d 50, 56 (2d Cir. 1998) (citing Woroski v. Nashua Corp., 31 F.3d 105, 109-10 (2d Cir. 1994)).

Where, however, "other indicia of discrimination are properly presented, the remarks can no longer be deemed 'stray,' and the jury has a right to conclude that they bear a more ominous significance." Id. Plaintiff alleges that Deane also told her that "she was too old to receive benefits" in connection with the part-time position in the Drainage Department not being converted to a full-time position. Deane avers that he does not recollect making this statement, but if he had done so, he "would have been referring to the requirement that a Town employee generally must complete twenty years of service in a full time position to receive retirement benefits." 9/3/10 Deane Decl., ¶14 (Dkt #57). Given that requirement, Plaintiff would have had to work until she was in her

early 70s to qualify for retirement benefits, even if the Town had converted her position to full-time. Id.

Plaintiff has not adduced "evidence of any other words, actions, or circumstances giving rise to an inference of age discrimination[,]" Holowecki, 644 F. Supp.2d at 358, by Deane. To the contrary, Deane took a number of actions to advance Plaintiff's career at the Highway Department, such as hiring her to fill the newly created permanent part-time position in the Drainage Department, and obtaining a 27%-pay raise for her. See 9/3/10 Deane Decl., ¶15 (Dkt #57). Taken together, the undisputed facts (or, where disputed, viewed most favorably to Piccone) do not support Piccone's claims of age discrimination and harassment based on her age.

### c.  Ageist Statement by Foreman Joe Herbst

In her memorandum of law, Plaintiff newly alleges that a statement by Joe Herbst ("Herbst"), a foreman in the Highway Department, contributed to the hostile work environment. Specifically, Plaintiff refers to Herbst's alleged comment that he "wished that he was hiring everybody so that he could have all the cute, young chickies in the office." Deposition of Pamela Piccone ("Piccone Dep."), Vol. 1, Ex. A, p. 269, lns 8-13 (Dkt. #63-4). Plaintiff, however, testified at her deposition, "Did I take offense to that [comment by Herbst]? No. But I knew that he said that all the time." Id. Plaintiff's deposition testimony completely

undermines her claim that this comment was offensive. <u>See</u> <u>Bickerstaff</u>, 196 F.3d at 455 (stating that a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that contradicts the affiant's previous deposition testimony). Even without that contradiction, the relatively innocuous, isolated comment by Herbst hardly rose to the level of what is considered harassing under the law of this Circuit. <u>See</u> <u>Alfano</u>, 294 F.3d at 394 ("Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness.").

Moreover, because Herbst was not a supervisor or a decisionmaker, any remark attributed to him does not, standing alone, support any inference of age discrimination. <u>Holowecki v.</u> <u>Federal Express Corp.</u>, 644 F. Supp.2d 338, 358 (S.D.N.Y. 2009) (citing, <u>inter alia</u>, <u>Siino v. New York City Bd. of Educ.</u>, No. 99-9327, 2000 WL 528651, at *1, 2000 U.S. App. LEXIS 8602, at *4 (2d Cir. May 1, 2000) ("[E]ven if [the employee] did make the alleged statements, they do not give rise to an inference of discrimination because she did not make hiring decisions.")).

### d.   Ageist Statement by Supervisor Nesbitt

Plaintiff stated that she overheard Town Supervisor Nesbitt make a "degrading" comment to an older female employee, Beverly Michele ("Michele"), who had been an office manager for many years. Plaintiff's deposition is not entirely clear, but it appears that Michele was applying for a job and Nesbitt remarked that there was

a job opening in the Sewer Department cleaning toilets. Because there was no such job opening, Plaintiff testified, this was a "smart way" of Nesbitt "saying something." Id. The remark, to the extent that it can be interpreted in an ageist light, was not directed towards Piccone but rather was made in reference to a co-employee. Again, this comment, which was at most a mildly sarcastic remark directed not directed at Plaintiff, does not come close to demonstrating a hostile workplace.

### e.   Anti-Italian Comments by Co-Workers Miscavage and Schneider

Plaintiff contends that two co-workers, Schneider and Miscavage, used anti-Italian epithets which created a hostile work environment for her because she was married to an Italian and had many Italian friends, although she admits she is not of Italian descent. Plaintiff has acknowledged that these comments were made mostly in reference to Town residents. See Feinstein Decl., ¶¶45-47 (Dkt #58) & Exs. UU, VV, & XX (Excerpts of Plaintiff's Deposition Testimony)(Dkt #58-10). Similarly, Plaintiff admitted that Schneider never used anti-Italian epithets when referring to her. Feinstein Decl., ¶45 and Ex. UU.  Although she insisted that Miscavage had referred to her using derogatory terms for Italians, she could not recall a specific incident. She admitted that it had not occurred on a daily, weekly, or even monthly basis. Plaintiff also states that Miscavage called her a "dago lover," but she

admitted that this comment occurred before 2006 and therefore is outside the applicable three-year statute of limitations.

Courts assign less weight to offensive comments directed at persons other than the individual plaintiff in evaluating the severity of alleged workplace harassment. See McKenzie v. Milwaukee County, 381 F.3d 619, 624 (7th Cir. 2004) ("Several of the incidents involved other female employees of the sheriff's office, and the impact of such 'second-hand' harassment is not as great as harassment directed at [plaintiff] herself.") (citing Patt v. Family Health Sys., Inc., 280 F.3d 749, 754 (7th Cir. 2002) ("Although these comments [to other employees] are relevant to Patt's claim, the impact of such 'second-hand' harassment is obviously not as great as harassment directed toward Patt herself.")

In Bainbridge v. Loffredo Gardens, Inc., 378 F.3d 756 (8th Cir. 2004), for instance, the plaintiff was married to a Japanese woman. He alleged that his supervisors made racially offensive comments about Asians on a monthly basis and used other racial slurs such as "spic," "wetback," and "nigger." The Eighth Circuit held that dismissal of the complaint was appropriate because the plaintiff "failed to present sufficient evidence that the harassment . . . was so severe or pervasive that it altered the terms or conditions of his employment." Id. at 760. Significantly, the remarks were "sporadic, no more than one per month, and were not even about

Bainbridge, his wife, or their marriage[.]" Id. Rather, "the alleged remarks were used in reference to customers, competitors, or other employees" and "[s]ome of the remarks were merely overheard by Bainbridge." Id.

That the anti-Italian comments alleged by Plaintiff were not directed at her personally undermines her claim that the conduct was severe enough to create a hostile workplace. See Black v. Zaring Homes, Inc., 104 F.3d 822, 826 (6th Cir. 1997) ("[W]e note that in this case most of the comments were not directed at plaintiff; this fact contributes to our conclusion that the conduct here was not severe enough to create an objectively hostile environment."); Brown v. Hot, Sexy and Safer Productions, Inc., 68 F.3d 525, 541 (1st Cir. 1995) (finding that plaintiffs' allegations were not so severe as to create an objectively hostile educational environment under Title IX, in part because the sexual comments were not directed at the plaintiffs), cert. denied, 516 U.S. 1159 (1996); Kunzler v. Canon, USA, Inc., 257 F. Supp.2d 574, 581-82 (E.D.N.Y. 2003) (holding that harassment of vendor was not an unlawful employment practice for purposes of evaluating retaliation claim).

### d.   Lewd Act by Paul Fennel

Plaintiff states in her memorandum of law that a mechanic's foreman, Paul Fennel ("Fennel") pulled down his pants at work and was not disciplined for it. Pl. Mem. at 16 (citing Piccone Dep.,

Vol. 1, Ex. A, p. 194, ln. 19; p. 195, ln. 19 (Dkt #63-4)). Plaintiff admits that she was not present when this partial disrobing by Fennel occurred. 10/22/10 Feinstein Decl., ¶4 & Ex. B (Dkt #64).

The mere fact that a plaintiff was not present when harassing conduct occurred will not render that conduct irrelevant to her hostile work environment claim. See Schwapp v. Town of Avon, 118 F.3d 106, 111 (2d Cir. 1997) ("Just as a racial epithet need not be directed at a plaintiff in order to contribute to a hostile work environment, see, e.g., Rodgers v. Western-Southern Life Ins. Co., 12 F.3d 668, 673, 675 (7th Cir. 1993), the fact that a plaintiff learns second-hand of a racially derogatory comment or joke by a fellow employee or supervisor also can impact the work environment, see Perry v. Ethan Allen, Inc., 115 F.3d 143, 151 (2d Cir. 1997).").

However, it must be borne in mind that "Title VII and the NYSHRL were not intended to sterilize employee relations or to create a generalized code of workplace civility." Urban v. Capital Fitness, No. CV08-3858(WDW), 2010 WL 4878987, at *8 (E.D.N.Y. Nov. 23, 2010) (citing Lucas v. South Nassau Communities Hosp., 54 F. Supp.2d 141, 147 (E.D.N.Y. 1998) ("Not all workplace conduct that may be described as harassment is actionable under Title VII, see Meritor Savings Bank, 477 U.S. at 67, 106 S.Ct. at 2405, because Title VII was not intended to sterilize the workplace.")).

Work-related conduct that may be characterized described as "immature, nasty, or annoying, without more, is not actionable as sexual harassment." Nolan v. Epifanio, No. 96 Civ. 2562(JSR), 1998 WL 665131, at *3 (S.D.N.Y. Sept. 28, 1998); accord Urban, 2010 WL 4878987, at *8 ("While Urban has described a workplace infected with incidents of obnoxious and puerile behavior, she has not produced enough evidence to raise an issue material fact as to whether there was workplace hostility severe or pervasive enough to alter the conditions of her employment or to create an abusive, not just offensive, working environment.").

Allowing that Fennel's dropping his trousers was "obnoxious and puerile behavior[,]" Urban, 2010 WL 4878987, at *8, it was an isolated incident that standing alone, or considered with Plaintiff's other allegations, fails to rise to the level required to raise a triable issue of fact as to whether there was a hostile work environment. See, e.g., Lamar v. Nynex Service Co., 891 F. Supp. 184, 185 (S.D.N.Y. 1995) (supervisor's touching of plaintiff's hand while observing that she "looked really hot," combined with vulgar sexual remarks on four other occasions was "too mild and innocuous to constitute sexual harassment as a matter of law"); Buddle v. Heublein, Inc., 613 F. Supp. 491, 492 (S.D.N.Y. 1985) (defendant's off-color jokes and touching of plaintiff's knee and shoulder did not constitute sexual harassment but were "only a reflection of his bumptious personality").

e. **Pornography on Superintendent Deane's Work Computer**

Plaintiff alleges that Deane kept pornographic pictures and videos on his work computer. Pl. Mem. at 13-14 (Dkt #63-3)(citing Pl. Counter-Statement, ¶¶107-16) (Dkt #63-1). Damon Piccone, Plaintiff's step-son, an information technology specialist, testified that Deane had asked Plaintiff to ask him to come in and remove the pornography files that Deane had on his work computer. Deposition of Damon Piccone, Vol. I, Ex. C at pp. 12-15. Plaintiff states that Deane "would ask his female subordinate employees to come into his office and view [the pornographic images] with him." Pl. Counter-Statement, ¶111 (citing Vol. III, Ex. E, Roeszies Aff., ¶¶9-10 (Dkt #63-11)). Roeszies states that Deane on "several occasions" had her come into his office and look at pornography on his computer, which made her feel uncomfortable. Roeszies Aff., ¶¶9-10 (Dkt #63-11). Roeszies does not allege that Plaintiff or any other co-workers were present on these occasions. See id.

Defendants do not dispute that this occurred but rather point out that Plaintiff has failed to allege that Deane ever showed the pornographic material to her. Def. Reply Mem. at 6 n.27 (Dkt #68) (citing Piccone Aff., ¶¶79-80)(Dkt #63-11)).

Plaintiff is correct that the Second Circuit "has specifically recognized that the mere presence of pornography in a workplace can alter the 'status' of women therein and is relevant to assessing the objective hostility of the environment." Patane v. Clark, 508

-40-

F.3d 106, 114 (2d Cir. 2007) (citing <u>Wolak v. Spucci</u>, 217 F.3d 157, 160-61 (2d Cir. 2000)). In <u>Patane</u>, the Second Circuit reinstated the plaintiff's complaint where she had alleged that was regularly required to handle pornographic videotapes in the course of performing her employment responsibilities of opening and delivering her supervisor's mail; and that she once discovered hard core pornographic websites that the supervisor (a professor at Fordham University) viewed on <u>her</u> workplace computer. 508 F.3d at 114. Combined with Patane's other allegations regarding the supervisor's sexually inappropriate behavior in the workplace, including her allegation regarding his earlier harassment of another employee, and with the university's failure to take any action notwithstanding Patane's numerous complaints, "a jury could well conclude that [she] was subject to frequent severely offensive conduct that interfered with her ability to perform her secretarial functions." <u>Id.</u>

Deane's conduct in viewing pornography at work and allegedly showing it to Roeszies is not to be condoned. However, Plaintiff has not alleged that she came into contact with the pornographic material. As Defendants note, Plaintiff has not asserted that Deane showed this material to her or that she was required to view it. Evaluating this case in comparison to the conduct described in <u>Patane</u>, 508 F.3d at 114, Plaintiff's allegations concerning Deane do not rise to an actionable level. See <u>Dotson v. City of Syracuse</u>,

No. 5:04-CV-1388, 2007 WL 2176127, at *15 (N.D.N.Y. July 21, 2009) ("The record establishes that plaintiff saw pornography at the SPD on two occasions over a five to six month period. On the first occasion, Harrington was viewing still photographs and plaintiff had to physically walk behind Harrington to observe what he was viewing. The record does not indicate that the still photographs were publicly displayed or disseminated. . . . [N]o reasonable factfinder could conclude that these two events were severe or pervasive to constitute a hostile work environment." ) (citation omitted).

### f.   "Shoulder-grabbing" by Peter Miscavage

Plaintiff states in her memorandum of law that on "more than one occasion co-worker Peter Miscavage ("Miscavage") grabbed [her] shoulder so hard that she hit the ground twice [sic]." Pl. Mem. at 16 (citing Piccone Dep., Vol. I, Ex. A, p. 119, lns 17-21; Vol. III, Ex. A, ¶70). However, Plaintiff denied at her deposition that Miscavage had harassed her. 10/22/10 Feinstein Decl., ¶4 & Ex. B (Dkt #64). Plaintiff's allegation in her memorandum of law does not create an issue of fact in light of her sworn deposition testimony to the contrary. Bickerstaff, 196 F.3d at 455. (stating that a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that contradicts the affiant's previous deposition testimony). Accordingly, the Court will not consider it.

-42-

### g.   Shoving by Superintendent Deane

Plaintiff asserts that Deane "shoved" her on "one particular occasion" but she does not provide a date of this alleged incident. Plaintiff states that she recorded the incident on a Post-it note. Pl. Mem. at 16. According to Plaintiff, Deane told her, "Get that out of there and throw it away now. I don't want that in that book; get it out of there and throw it away now." Id. (citing Piccone Dep., Vol. I, Ex. A, p. 132, lns. 14-17 (Dkt #63-4)). Plaintiff, however, testified at her deposition that this incident did not happen. Feinstein Reply Decl., ¶ 5 & Ex. D. Plaintiff cannot create an issue of fact simply by making a statement in contradiction to earlier sworn testimony. Bickerstaff, 196 F.3d at 455. Accordingly, the Court will not consider this incident.

### h.   Racist Comment by James Manley

Plaintiff and Deane were present when another employee, James Manley ("Manley"), made a patently offensive comment concerning a newspaper report about five black children perishing in a fire. See 9/3/10 Deane Decl., ¶19 (Dkt #57). The Second Circuit has explained that "offensive remarks or behavior" need not necessarily "be directed at individuals who are members of the plaintiff's own protected class." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000). Remarks targeting members of other minorities, although they "may be of limited probative value, . . . cannot be

ignored on summary judgment." Schwapp v. Town of Avon, 118 F.3d at 112.

Deane states that he "never condoned such comments by Manley" and "had repeatedly admonished Manley about similar comments that he had made. . . ." 9/3/10 Deane Decl., ¶19 (Dkt #57). Deane avers that he "subsequently wrote [Manley] a note advising that his conduct would not be tolerated" and to Deane's knowledge, Manley's racist comments subsequently stopped. Id.

Given that this was an isolated incident whose probative value is lessened because the comment was not directed at Plaintiff's protected class, no reasonable jury could conclude that it was so "extraordinarily severe" as to have altered Plaintiff's conditions of employment. See Guerrero v. Lowe's Home Centers, Inc., No. 06-5894-cv, 254 Fed. Appx. 865, 866, 2007 WL 4009704, at **1 (2d Cir. Nov. 16, 2007) ("In the instant case, where the sex-related conduct complained of was principally name calling, no single incident was sufficiently severe to give rise to a cause of action, nor was the alleged harassment sufficiently pervasive to meet the threshold for a hostile work environment.").

## I.   Display of a "Doctored" Semi-Nude Photograph of a Co-Worker

Plaintiff states that on one occasion, co-worker Kujawa showed her a photograph of what appeared to be a co-worker dressed in a police uniform with his penis exposed. Plaintiff testified at her deposition that she assumed the photograph had been doctored,

stating, "I don't think [the co-worker]'s Playgirl material or anything like that." Plaintiff's Deposition, Vol. I, Ex. A, p. 101, lns 2-18. When asked when this occurred, Plaintiff replied that she did not know and said, "I'm going to tell you 2005 or 2006." Ex. ZZ (Excerpt from Plaintiff's Deposition) to Feinstein Decl. (Dkt #58-10). Thus, the incident easily might have been outside the statute of limitations. In any event, it falls into the same category as the incident in which a co-worker dropped his pants-in poor taste, but not so offensive or humiliating as to amount to create a hostile work environment. See generally Alfano, supra.

### j.   Comments by Superintendent Deane Regarding His Sex Life

On "a few" occasions, Plaintiff states that Deane came into the office and stated that he "got lucky in the morning" and once used the phrase "blow job." See Exs. OO and PP (Excerpts from Plaintiff's Deposition) to 9/3/10 Feinstein Decl. (Dkt #58-10) & Feinstein Decl., ¶¶ 37-40 (Dkt #58). On one occasion he stated that his wife "wanted to insure his tongue." See id. Plaintiff testified that these comments, coming from her supervisor rather than a peer, made her "uncomfortable" because they were "too much information". Apparently, Deane came in the next day and said that his wife was angry at him for boasting about their sex life to his co-workers. These comments certainly were crass and show Deane to be lacking in good judgment, but they were isolated incidents and not so

offensive as to create a hostile work environment. <u>See</u> <u>generally</u> <u>Alfano</u>, <u>supra</u>.

### k.   Photographs of Girls in Bikinis on a Co-Worker's Desk

Plaintiff states that Herbst, a foreman in the Highway Department, had photographs of "girls with skimpy bikinis" on his desk. <u>See</u> Plaintiff's Deposition, Vol. I, Ex. A, p. 102, lns 17 to p. 103, ln 8. This falls into the category of conduct that might be characterized described as "immature, nasty, or annoying," but without more, it "is not actionable as sexual harassment." <u>Nolan v. Epifanio</u>, 1998 WL 665131, at *3.

### l.   Reference to a Female Co-Worker as a "Bonesmoker"

Plaintiff asserts that she overheard Deane and several other employees refer to a female co-worker as a "bonesmoker." Significantly, Plaintiff admits that she personally was never described in such terms. This comment, although certainly offensive, was relatively mild in comparison to the types of egregious remarks held not to have created a hostile workplace. <u>See</u> <u>Garone v. United Parcel Service</u>, 436 F. Supp.2d 448, 451-55 (E.D.N.Y. 2006), <u>aff'd</u>, 254 Fed. Appx. 107 (2d Cir. 2007) (affirming summary judgment in favor of employer where, among other incidents, the female plaintiff was called the "office bitch" and a "bimbette" by her supervisor; another supervisor and another

supervisor suggested that she join him and his wife in a threesome).

### m.   The Totality of the Circumstances

As noted above, a plaintiff alleging a hostile work environment "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of her working environment." Alfano v. Costello, 294 F.3d at 374 (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (quotation omitted)). Courts routinely dismiss hostile work environment claims under circumstances indistinguishable from those here where a limited number of relatively mild incidents are alleged over a period of months or years.

For example, in Alfano, the plaintiff, a corrections officer, claimed that she was subjected to repeated incidents of sexual harassment by both her supervisor and coworkers over approximately six months, including (1) being told by a supervisor not to eat carrots, bananas, hot dogs, or bananas on the job because she did so in a "seductive" manner; (2) being accused by another superior of simulating oral sex with a carrot; (3) having yet another superior laugh when she reported that someone had placed a carrot and two potatoes arranged as male genitalia in her workplace mailbox; and (4) having a notice placed in the visitors' area

stating that "'[C]arrots will not be allowed in the visiting room due to the plaintiff's strong liking for them. If they are diced up, it will be okay. Supt.'" <u>Alfano</u>, 294 F.3d at 370-71 (alteration in original).

Notwithstanding these, and several other incidents of harassing behavior, the Second Circuit reversed a jury verdict in the plaintiff's favor. <u>Id.</u> at 376 ("We conclude that the twelve incidents cited by Alfano, taken together, are insufficient as a matter of law to meet the threshold of severity or pervasiveness required for a hostile work environment, and that the district court therefore should have granted DOCS's motion for judgment as a matter of law."). The Second Circuit noted that a reasonable person "could have found the . . . incidents humiliating, and they were plainly offensive." <u>Alfano</u>, 294 F.3d at 380. Nevertheless, "they were too few, too separate in time, and too mild, under the standard so far delineated by the case law, to create an abusive working environment." <u>Id.</u>

Here, Plaintiff's allegations concerning sexual, racial, and age-based and harassment–viewed either separately or together–fail to demonstrate that her "workplace [was] 'permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently pervasive to alter the conditions of . . . [her] employment.'" <u>Brennan v. Metro. Opera Ass'n</u>, 192 F.3d 310, 318

(2d Cir. 1999) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).

## V.    The Farager/Ellerth[3] Defense

Defendants asserts that, even if Plaintiff were able to establish a prima facie case of a hostile work environment, it would nonetheless be entitled to summary judgment based on the Faragher/Ellerth defense. See Ferraro v. Kellwood Co., 440 F.3d 96, 101 (2d Cir. 2006) (applying Faragher/Ellert defense to discrimination claims under the NYHRL); Lennon v. New York City, 392 F. Supp.2d 630, 640 (S.D.N.Y. 2005) (applying Faragher/Ellert defense to Title VII, NYSHRL, ADEA and ADA claims) (citations omitted).

To successfully demonstrate this affirmative defense, the employer must demonstrate that it (a) "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (b) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Burlington Indus., 524 U.S. at 765; see also Faragher, 524 U.S. at 807. This defense is available "only if one of two . . . elements is met: either (1) the employee's supervisor took no 'tangible employment action,' which involves an official company act, against the employee; or (2) any

---

[3]    Faragher v. City of Boca Raton, 524 U.S. 775 (1998); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998).

tangible employment action taken against the employee was not part of the supervisor's discriminatory harassment." <u>Ferraro</u>, 440 F.3d at 101 (citing <u>Faragher</u>, 524 U.S. at 808; <u>Burlington Indus.</u>, 524 U.S. at 765).

"'Tangible employment action' refers to 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" <u>Leopold v. Baccarat, Inc.</u>, 239 F.3d 243, 245 n. 1 (2d Cir. 2001) (quoting <u>Burlington Indus.</u>, 524 U.S. at 761). Plaintiff has failed to meaningfully address Defendant's affirmative defense. Nevertheless, the case law indicates that her firing constitutes a <u>prima facie</u> tangible employment action, and therefore Defendants are not entitled to claim this affirmative defense. <u>Accord</u> <u>Wagner v. Burnham</u>, No. 1:03-CV-1522, 2006 WL 266551, at *14 (N.D.N.Y. Feb. 1, 2006) ("As the firing of Wagner constitutes a <u>prima facie</u> tangible employment action, defendants are not entitled to claim th[e] [<u>Faragher</u>/<u>Ellerth</u>] affirmative defense.").

## VI. Liability Under <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658 (1978) (Fourth Cause of Action)

Under <u>Monell</u>, "a local government may not be sued under [42 U.S.C.] § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity

is responsible under § 1983." 436 U.S. at 694. It is "well settled in the Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Westbrook v. City Univ. of N.Y., 591 F. Supp.2d 207, 224 (E.D.N.Y. 2008). An individual in a supervisory role may be found to have been "personally involved" if that person (1) defendant participated directly in the alleged constitutional violation, (2) failed to remedy the wrong, after being informed of the violation through a report or appeal; (3) created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) exhibited deliberate indifference to the rights of the plaintiff by failing to act on information indicating that unconstitutional acts were occurring. Id. at 224-25.

"The fifth element-the 'official policy' element-can only be satisfied where a plaintiff proves that a 'municipal policy of some nature caused a constitutional tort.'" Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008) (quoting Monell, 436 U.S. at 691). "In other words, a municipality may not be found liable simply because one of its employees committed a tort." Board of County Comm'rs v. Brown, 520 U.S. 397, 405 (1997); accord Roe, 542 F.3d at 36.

The Supreme Court clearly has held that "a municipality cannot be made liable" under 42 U.S.C. § 1983 for acts of its employees "by application of the doctrine of respondeat superior." Pembaur v. City of Cincinnati, 475 U.S. 469, 478 (1986). "[G]overnment bodies can act only through some natural persons" and therefore "governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights." City of St. Louis v. Praprotnik, 485 U.S. 112, 122 (1988) (emphases added).

Plaintiff asserts that she has established liability under Monell, stating that "as a result of Defendants [sic] failure to take remedial action with regard to Plaintiff's complaints, Defendants [sic] failure to properly train or supervise its [sic] employees, the failure to properly investigate, and the reckless disregard or gross indifference by Defendants for the gross negligence of those employees who stood in a managerial role to Plaintiff, the Town of Webster had a policy, practice or custom which permitted its deputies to engage in such gross misconduct that subjected its female employees to a hostile environment." Pl. Mem. at 24-25 (Dkt #63-3).

Apart from the fact that these allegations are vague and unsubstantiated, they largely do not have anything to do with the case at bar and seem to have been copied from a pleading in a different case. For instance, this case does not involve a failure

to train or a failure to investigate; there is no allegation of gross negligence by any party; and there are no "deputies" named as defendants. Campbell v. Giuliani, 99-CV-2603, 2000 WL 194815, at *5, 2000 Dist. LEXIS 1617, at *19-20 (E.D.N.Y. Feb. 16, 2000) ("[T]hese bare and conclusory allegations are insufficient to state a Monell claim, notwithstanding the liberal notice pleading standard . . . . Campbell has not identified any specific facts in support of his assertion of an official policy or custom. Indeed, the reference to excessive and deadly force suggested that Campbell simply cribbed this paragraph from another complaint entirely-and counsel admitted as much at oral argument. Accordingly, Campbell's Monell claim is dismissed."); Aquilera v. County of Nassau, 425 F. Supp.2d 320, 324 (E.D.N.Y. 2006) (dismissing complaint where there were no "facts from which it can be inferred, even circumstantially, that a County custom or policy . . . was the driving force the plaintiff's alleged constitutional violation").

Here, Plaintiff has not come forward with competent evidence that any of the alleged constitutional violations described above in this Decision and Order were pursuant to an official Town policy or practice. The alleged harassing and discriminatory conduct was and is prohibited by the Town's Equal Employment Opportunity and Anti-Harassment policies. Employees within the Highway Department-including Plaintiff-received anti-discrimination training. See Reynolds v. Giuliani, 506 F.3d 183, 196 (2d Cir. 2007) ("Our view

that state defendants' efforts to foster [agency] compliance [with applicable laws] preclude a finding of deliberate indifference finds support in our cases and those of our sister circuits addressing claims against supervisors who tried, but failed, to prevent injury to plaintiffs.").

In sum, Plaintiff has failed to allege any "facts from which it can be inferred, even circumstantially, that a [Town] custom or policy . . . was the driving force the plaintiff's alleged constitutional violation. . . ." Aguilera v. County of Nassau, 425 F. Supp.2d 320, 324 (E.D.N.Y. 2006). Therefore, the Monell claims must be dismissed.

## VII. Conclusion

For the foregoing reasons, Defendants' motion to strike the Roeszies Declaration (Dkt #70) is denied, and Plaintiff's motion to strike the Tanea Declaration (Dkt #73) is denied. Defendants' motion for summary judgment (Dkt #55) is granted in its entirety for the reasons discussed above. Plaintiff's complaint (Dkt #1) accordingly is dismissed.

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

DATED:    August 2, 2011
          Rochester, New York

-54-